IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

POM OF PENNSYLVANIA, LLC,          :
t/d/b/a PACE-O-MATIC, and          :
SAVVY DOG SYSTEMS, LLC,            :        No. 1:20-cv-01942
    Plaintiffs                 :
                               :        (Judge Kane)
    v.                         :
                               :
UNITED AMUSEMENT                   :
ALTERNATIVES, JOHN DOES 1-100,     :
AND XYZ COMPANIES 1-100,           :
    Defendants                 :

## ORDER

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS**:

On October 21, 2020, Plaintiffs POM of Pennsylvania, LLC, t/d/b/a Pace-O-Matic, and

Savvy Dog Systems, LLC (collectively, "Plaintiffs") initiated the above-captioned action by

filing a complaint against Defendants United Amusement Alternatives, John Does 1-100, and

XYZ Companies 1-100 (collectively, "Defendants"), alleging Lanham Act violations and related

state claims arising from Defendants' alleged unauthorized use of Plaintiffs' common-law

trademark in connection with the marketing and sale of game machines.  (Doc. No. 1.)  A

summons for service on Defendants was also issued on October 21, 2020.  (Doc. No. 2.)  On

January 19, 2021, Plaintiffs filed a Motion for Extension of Deadline for Service of Process and

Leave to Serve Process by Electronic Means.  (Doc. No. 6.)  On January 28, 2021, Plaintiffs filed

a brief in support of the motion.  (Doc. No. 7.)  In their motion and brief, Plaintiffs assert that

they have been unable to locate and serve Defendants because they "have continued to take

calculated measures to conceal their identity and whereabouts."  (Doc. No. 7 at 1.)  Accordingly,

Plaintiffs request an extension of time to effect service and permission to effect service through

alternative means, specifically via a Facebook posting and private message on Defendant United

Amusement Alternatives' Facebook page.  (Doc. No. 7 at 4-6.)

In connection with their motion and brief, Plaintiffs submit the affidavit of Jeff Millay

("Millay"), the Sales Manager of Miele Manufacturing, the sole licensed distributor of

Pennsylvania Skill Games Machines manufactured by Plaintiffs, detailing Plaintiffs' efforts to

identify and locate the individuals/entities behind Defendant United Amusement Alternatives

("Defendant UAA").  (Doc. No. 7 at 12-14.)  Millay's affidavit attests as follows:

> 3. Sometime in late 2019, I became aware that an unregistered entity called
> United Amusement Alternatives, operating under a Facebook Account at
> www.facebook.com/United-Amusement-Alternatives-109983013718801, was
> promoting and selling game machines, including software and related components
> that purported to be a Pennsylvania Skill Game Machine produced and distributed
> by Miele Manufacturing, or closely associated with it.
>
> 4. Thereafter, I launched an investigation and discovered that United Amusement
> Alternatives had placed counterfeit products with "Pennsylvania Skill" labeling in
> locations throughout the Commonwealth of Pennsylvania, including Springville,
> PA.  I also discovered that United Amusements had been soliciting customers and
> circulating misleading mailing advertisements that included the "Pennsylvania
> Skill" trademark.
>
> 5. Through intermediaries, I contacted the phone number listed on the
> aforementioned Facebook page numerous times in an effort to discover the
> individuals and entities behind United Amusements.  When first contacting the
> listed number, an unknown male answered and stated the following: · All
> machines are "skill based and legal in PA". · His company will service and
> maintain the machines free of charge. · There are no upfront costs to have the
> machines installed. · His salesman will visit the location and assist in determining
> the number and type of machines. · Money will be split 50/50 or 60/40 (in favor
> of the customer) depending on negotiation and the number of machines. · His
> company is based out of the Philadelphia area and will serve the Lancaster
> County area.
>
> 6. The unknown male would not divulge any additional information or provide his
> name.  When contacted again, the unknown male was very guarded about the
> information he would provide and indicated that he will send out salesmen to
> place the machines, if necessary.  This unknown individual was later determined
> to be named "John" based on the voicemail message associated with the phone
> number.

> 7. Despite my best efforts, which have also included numerous conversations with the targets of United Amusements' solicitation at issue in this suit and investigation into the United Amusement phone number, my efforts to uncover information that could lead to an address and identity associated with "John" and United Amusement have proven unsuccessful.

(Doc. No. 7 at 13-14.)

First, with regard to Plaintiffs' request for a ninety (90) day extension of time to effect service on Defendants (id. at 5), the Court notes that while the Federal Rules of Civil Procedure generally require that service be effected within ninety (90) days of the date on which a complaint is filed, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  See Fed. R. Civ. P. 4(m).  Courts generally "consider 'three factors in determining the existence of good cause under Rule 4(m): (1) reasonableness of plaintiff's efforts to serve[;] (2) prejudice to the defendant by lack of timely service[;] and (3) whether Plaintiff moved for an enlargement of time to serve.'"  See Beautyman v. Laurent, 829 F. App'x 581, 583 (3d Cir. 2020) (quoting MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995)).

Here, the Court finds that Plaintiffs have established good cause supporting an extension of time to effect service.  Plaintiffs' motion, brief and affidavit demonstrate that: Plaintiffs have made reasonable efforts over a period of time to identify and locate Defendant UAA so as to effect service; Defendant UAA will not be prejudiced by a delay in effecting service; and Plaintiffs moved for an enlargement of time to effect service within the original ninety (90) day service period prescribed by Rule 4(m).  Accordingly, the Court will grant Plaintiffs' request for a ninety (90) day extension of time to effect service in this matter.

Second, with regard to Plaintiff's request for permission to utilize Facebook posting and messaging as an alternative form of service of process, the Court notes that Federal Rule of Civil

Procedure 4(e) provides that service may be made in a judicial district of the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." See Fed. R. Civ. P. 4(e)(1). Under the Pennsylvania Rules of Civil Procedure, "[i]f service cannot be made under the applicable rule the plaintiff may move the court for a special order directing the method of service." See Pa. R.C.P. No. 430(a). Rule 430 also specifically details rules for service by publication. See Pa. R.C.P. No. 430(b)(1).

"Service by special order is an extraordinary measure that is appropriate only after all other methods of service available under the rules have been exhausted." Countrywide Home Loans, Inc. v. Stringer, No. 07-2072, 2008 WL 3853239, at *2 (M.D. Pa. Aug. 15, 2008) (collecting cases). When seeking alternative service, a plaintiff bears the burden of showing: "(1) an unsuccessful attempt to properly serve the defendant; (2) a good faith effort to locate the defendant; and, (3) a method of alternative service that is reasonably calculated to give actual notice to the defendant." See id. Pennsylvania Rule of Civil Procedure 430(a) offers the following illustrations of a "good faith effort to locate the defendant":

> (1) inquiries of postal authorities including inquiries pursuant to the Freedom of Information Act, 39 C.F.R Part 265, (2) inquiries of relatives, neighbors, friends, and employers of the defendant, (3) examinations of local telephone directories, courthouse records, voter registration records, local tax records, and motor vehicle records, and (4) a reasonable internet search.

Pa. R. C. P. No. 430. However, "[a]lternative service is only appropriate when service 'cannot be made' under the applicable Rule, and only as a last resort." See Grove v. Guilfoyle, 222 F.R.D. 255, 257 (E.D. Pa. 2004).

Upon review of the Complaint in this matter and the exhibits attached to it, as well as Plaintiffs' moving papers and supporting affidavit, and the relevant authorities, the Court cannot

4

conclude at this time that Plaintiffs have met their burden to demonstrate the three required elements justifying permission for alternative service. First, while the Court acknowledges the efforts of Plaintiffs (articulated by the Millay affidavit) to identify and locate Defendant UAA so as to effect service, the Court cannot conclude that Plaintiffs have met their burden to demonstrate a good faith effort to locate and serve Defendant UAA. For example, Plaintiffs do not represent that they have engaged a private investigator to attempt to ascertain the identity or location of any individual/entity associated with Defendant UAA, including by performing online public records searches or Westlaw database searches. See, e.g., E.L.V.H. v. Bennett, No. 2:18-cv-00710-ODW (PLA), 2018 WL 6131947, at *2 (C.D. Cal. May 3, 2018) (permitting alternative service by email and Facebook under New York law where plaintiffs were unable to locate defendant after hiring a private investigator and performing "online public records [] searches, [and] Westlaw database searches," as well as reviewing the defendant's social media profiles).

However, even if the Court were to conclude that Plaintiffs have met their burden to demonstrate a good faith effort to locate and serve Defendant UAA, it cannot conclude, based on the information before it, that the method of alternative service sought by Plaintiffs – Facebook posting and messaging – is reasonably calculated to give actual notice to Defendant UAA. In arguing that their proposed method of alternative service is calculated to give actual notice to Defendant UAA, Plaintiffs rely on cases in this district where the Court has permitted service by email in similar situations. See POM of Pennsylvania LLC, et al. v. PASKILLVENDING.COM, et al., No. 4:19-cv-00529-MWB, ECF No. 13 (M.D. Pa. July 15, 2019) (permitting alternative service by email where the entities behind the online defendants appeared to take measures to conceal their identities); Power Corp. of Canada v. Power Fin., No. 4:09-cv-0510, 2009 WL

982750, at *1 (M.D. Pa. Apr. 13, 2009) (permitting alternative service by email in an trademark action against a website operating through "an online service that shield[ed] the owner's identity" where the plaintiff could not ascertain identity of the website's owner and so locate a valid physical address).  Plaintiffs acknowledge that here they seek permission for alternative service by Facebook instead of by email, as in the above cases, but argue that "[t]his difference, however, is not an issue because courts across the country routinely hold that service via social media pages is warranted in situations like the one at bar."  (Doc. No. 7 at 7.)

However, the Court's review of relevant authorities indicates that courts have generally permitted alternative service by Facebook "only as a 'backstop' for service by other means."  See Doe v. Hyassat, 337 F.R.D. 12, 15 (S.D.N.Y. 2020) (collecting cases and denying application to serve process exclusively via Facebook message).  For example, several of the relevant cases permit service by Facebook as a backup to service at an email address.  See, e.g., Bennett, 2018 WL 6131947, at *2-3 (permitting alternative service by email and Facebook message); Ferrarese v. Shaw, 164 F. Supp. 3d 361, 367 (E.D.N.Y. 2016) (stating that "[s]ervice by Facebook . . . has only been allowed in cases where 'the proposed service by Facebook is intended not as the sole method of service, but instead to backstop the service upon each defendant at . . . its[] known email address'") (quotation omitted); F.T.C. v. PCCare 247 Inc., No. 12 Civ. 7189(PAE), 2013 WL 841037, at *5 (S.D.N.Y. Mar. 7, 2013) (noting that "if the FTC were proposing to serve defendants only by means of Facebook, as opposed to using Facebook as a supplemental means of service, a substantial question would arise as to whether that service comports with due process").

The lone case cited to the Court by Plaintiffs permitting alternative service of process exclusively by Facebook message is Baidoo v. Blood-Dzraku, 48 Misc.3d 309, 317 (N.Y. Sup.

6

Ct. 2015).  In that case, a trial court in New York state concluded that the service of a divorce summons solely via Facebook was consistent with constitutional standards of due process where the plaintiff submitted an affidavit verifying that the referenced Facebook account actually belonged to the defendant, "to which she annexed copies of the exchanges that took place between her and defendant when she contacted him through his Facebook page, and in which she identified defendant as the subject of the photographs that appear on that page."  See id. at 314-15.  The court acknowledged that "[w]hile it is true that plaintiff's statements are not absolute proof that the account belongs to the defendant – it being conceivable that if plaintiff herself or someone at her behest created defendant's page, she could fabricate exchanges and post photographs – plaintiff has nevertheless persuaded the court that the account in question does indeed belong to defendant."  See id. at 315.  The court also noted that plaintiff's exchanges with defendant showed that "he regularly logs on to his account," and further noted that plaintiff's possession of a mobile phone number for defendant meant that she could leave him a voicemail message informing him of the divorce action and the need to check his account.  See id.

With regard to the Facebook page by which Plaintiffs seek permission to serve Defendant UAA, Plaintiffs represent that "posting the Complaint to www.facebook.com/United-Amusement-Alternative-109983013718801 is reasonably calculated to notify Defendant(s) of this action because the Facebook page is clearly operational and is used by the Infringing Website and/or its agents," and "Defendants routinely respond to 'customer' posts on the United Amusement Alternatives Infringing Website about placement of their illegal games."  (Doc. No. 7 at 7.)  In support of this statement, contained only in Plaintiffs' brief and not offered by way of sworn affidavit, Plaintiffs include a screenshot of the Facebook page that Plaintiffs maintain demonstrates Defendant UAA's response to customer posts.  (Id. at 8.)  In light of the novel

nature of the form of alternative service of process sought by Plaintiffs here – service of process solely by Facebook posting and message – and mindful of constitutional requirements of due process, the Court finds that the materials submitted to it in connection with Plaintiffs' motion are simply insufficient for the Court to confidently conclude that service of process via Facebook is "reasonably calculated to give actual notice" to Defendant UAA.  See Stringer, 2008 WL 3853239, at *2.[1]   Accordingly, the Court will deny Plaintiffs' request for leave to serve process by electronic means (Facebook) without prejudice to Plaintiffs' ability to renew the motion for alternative service.

AND SO, on this 2nd day of February 2021, IT IS ORDERED THAT Plaintiffs' motion for extension of deadlines for service of process and leave to serve process by electronic means (Doc. No. 6) is GRANTED IN PART and DENIED IN PART, as follows:

1. Plaintiffs' motion for extension of deadline for service of process is GRANTED, and Plaintiffs shall have an additional ninety (90) days, or until April 21, 2021, to serve Defendants; and

2. Plaintiffs' motion for leave to serve process by electronic means is DENIED WITHOUT PREJUDICE.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[1] The Court notes that Exhibit C to Plaintiffs' Complaint (Doc. No. 1-4), a photograph of marketing materials apparently utilized by Defendant UAA, contains a reference to an email address for Defendant UAA; however, Plaintiffs' motion and brief do not mention any efforts that they have made to contact Defendant UAA through this email address.